Josephine M. SHEKU–KAMARA and Jawa A. Sheku-Kamara, by and through his natural guardian Josephine M. Sheku-Kamara,

v.

Lyle L. KARN, District Director of the Immigration and Naturalization Service, Philadelphia District Office.

Civ. A. No. 83–4889.

United States District Court,
E.D. Pennsylvania.

March 2, 1984.

Lawrence H. Rudnick, Philadelphia, Pa., for plaintiffs.

Edward S.G. Dennis, Jr., U.S. Atty., Alexander Ewing, Jr., Asst. U.S. Atty., Philadelphia, Pa., for defendant.

MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court are plaintiffs' and defendant's motions for summary judgment. For the reasons stated herein, plaintiffs' motion for summary judgment will be denied and defendant's motion for summary judgment will be granted.

I. FACTS

Plaintiffs are Josephine M. Sheku-Kamara ("Mrs. Sheku-Kamara") and her child Jawa A. Sheku-Kamara. Defendant is Lyle L. Karn, District Director of the Philadelphia District Office of the Immigration and Naturalization Service. The facts of the case are undisputed.

On August 27, 1978, Benedict V. Sheku-Kamara, ("Mr. Sheku-Kamara"), a citizen and native of Sierra Leone, entered the United States as an exchange visitor pursuant to section 101(a)(15)(J) of the Immigration and Nationality Act of 1956 ("the Act"), 8 U.S.C. § 1101(a)(15)(J), to pursue a program of graduate studies sponsored by the United Nations at the University of Pennsylvania. Since this program was admittedly financed by the U.S. Government, Mr. Sheku-Kamara was subject to 8 U.S.C. § 1182(e), which, *inter alia*, imposes a two year foreign residence requirement on all persons who enter the United States pursuant to 8 U.S.C. § 1101(a)(15)(J) and participate in a program financed by the United States (known as a "J–1" visa). The two year foreign residence requirement requires that all subject persons return to and reside and be physically present in the country of their nationality or last residence for an aggregate of at least two years following departure from the United States before applying for an immigrant visa, permanent residence, or a nonimmigrant visa.

On January 16, 1981, the Immigration and Naturalization Service ("INS") completed a request by Mr. Sheku-Kamara for

a change of program.[1] The change, retroactive to October 9, 1979, transferred Mr. Sheku-Kamara's sponsorship from the United Nations program to a privately funded program sponsored by the University of Pennsylvania. Mr. Sheku-Kamara received no Government funding while in this privately funded program.[2]

On August 18, 1979, Mr. Sheku-Kamara married plaintiff, Mrs. Sheku-Kamara, *nee* Josephine Kebbie, in London, England. On March 6, 1980, plaintiff Jawa Sheku-Kamara, the son of Mr. and Mrs. Sheku-Kamara, was born in England. On August 5, 1980, the United States Embassy in London, England, issued a visa to Mrs. Sheku-Kamara and Jawa Sheku-Kamara as the dependents of Mr. Sheku-Kamara[3] (known as "J–2" visas). Shortly thereafter Mrs. Sheku-Kamara and her son entered the United States.

While in the United States, Mrs. Sheku-Kamara applied to the INS for adjustment of status from nonimmigrant to immigrant pursuant to section 245 of the Act, 8 U.S.C. § 1255.[4] On September 7, 1983, the application for adjustment of status was denied by defendant. The denial was based on the determination that Mrs. Sheku-Kamara was not eligible to become a lawful permanent resident of the United States since she, along with her child and husband, was subject to the two year foreign residence requirement imposed by 8 U.S.C. § 1182(e).

Plaintiffs have appealed the determination by defendant and seek a declaratory judgment that they are not subject to the two year foreign residence requirement.[5]

## II. DISCUSSION

While it is not disputed that Mr. Sheku-Kamara is subject to the two year residence requirement,[6] plaintiffs argue that they are not subject to the requirement because they entered the United States after Mr. Sheku-Kamara stopped participating in a Government funded program. Having entered at such time, plaintiffs argue that they did not receive any benefit from any Government funding and therefore Mr. Sheku-Kamara's status should not be imputed to them. Plaintiffs' argument fails for a number of reasons.

Firstly, a regulation which governs this situation has been promulgated. The regulation as set forth in 8 C.F.R. § 212.7(c)(4) provides:

A spouse or child admitted to the United States or accorded status under section 101(a)(15)(J) of the act to accompany or follow to join an exchange visitor who is subject to the foreign residence requirement of section 212(e) of the Act is also subject to that requirement.[7]

---

**1.** Administrative Record (A.R.), p. 7.

**2.** There is no dispute that despite the change in programs and regardless of the outcome of the present motions, Mr. Sheku-Kamara is still subject to the two year foreign residence requirement.

**3.** 8 U.S.C. § 1101(a)(15)(J) bestows exchange visitor status upon "the alien spouse and minor child ... of any [exchange visitor] if ... following to join him." *See also* 8 C.F.R. § 212.-7(c)(4).

**4.** The result of INS approval of such an application is that the alien obtains lawful permanent status in the United States, thus becoming eligible for United States citizenship five years from the date of approval of the application.

**5.** Only Mrs. Sheku-Kamara and Jawa Sheku-Kamara are plaintiffs in this case. There is no dispute that Mr. Sheku-Kamara remains subject

to the two year residence requirement. *See* note 2, *supra*.

**6.** *See* notes 2 and 5, *supra*.

**7.** In his decision denying plaintiff Mrs. Sheku-Kamara's application for adjustment of status, the District Director relied, in part, on an analogous regulation (A.R. pp. 70–71). That regulation, set forth at 22 C.F.R. § 41.65(b)(4) provides:

If an alien is subject to the 2-year foreign residence requirement of Section 212(e) of the Act, the spouse or child of such alien shall also be subject to such requirement if such spouse or child is admitted to the United States pursuant to Section 101(a)(15)(J) of the Act, or acquires status pursuant to such section after admission, for the purpose of accompanying or following to join such alien.

Although this court only addresses the regulation set forth in 8 C.F.R. § 212.7(c)(4), what is stated with regard to that regulation is equally applicable to 22 C.F.R. § 41.65(b)(4). Likewise, plaintiffs' arguments against application of ei-

Plaintiffs argue that this regulation is inapplicable to the situation before the court.[8] Plaintiffs also argue that nothing in the Act, or in the relevant administrative history requires application of the foreign residence requirement to a spouse and child of an exchange visitor in a Government financed program where they, the spouse and child, enter the United States after the principal alien has left the Government financed program. Such an argument is incorrect since it ignores a plain reading of the regulation and is a narrow incorrect reading of the leading case on the subject.

In *Matter of Tabcum*, 14 IN 113 (1972), a spouse of an exchange visitor was denied adjustment of her nonimmigrant status on the basis that she had entered the United States with her husband and therefore was subject to fulfilling the two year residence requirement prior to adjustment of status. The Regional Commissioner rejected the applicant's argument that the foreign residence requirement did not apply to spouses accompanying an exchange visitor. In so doing the Regional Commissioner noted that "to the extent she was permitted to enter and remain in the United States and was a beneficiary to the financial aspects of the principal alien's participation in the Government-sponsored program, she too derived benefits from such program."[9] *Id.* at 114.

Plaintiffs do not suggest that *Matter of Tabcum* is incorrect. Rather, they argue that *Matter of Tabcum* is supportive of their position that a spouse or child must in some way be a beneficiary of the financial aspects of a Government-sponsored program before they can be subject to the two year foreign residence requirement. While *Matter of Tabcum* does stand for the proposition that an exchange visitor's spouse [or child] who receives some benefit from the Government's funding of a program is subject to the two year requirement, the scope of the decision is broader. As the Regional Commissioner stated without qualification, "the two-year foreign residence requirement ... applies to the spouse [and child] of an exchange visitor where the principal alien is subject to such provision." (citing Gordon and Rosenfield, *Immigration Law and Procedure*, 68.g, p. 6–51, footnote 40b). Additionally, the fact that plaintiffs have not derived any financial benefit from Mr. Sheku-Kamara's participation in a Government funded program is not dispositive where, as here, plaintiffs have received the more significant benefit of having been permitted to enter the United States solely because Mr. Sheku-Kamara has been and continues to be an exchange visitor.

Secondly, to decide that plaintiffs are not required to comply with the two year foreign residence requirement would create the anomalous result of putting plaintiffs, who derive their status solely through Mr. Sheku-Kamara, in a better position than Mr. Sheku-Kamara who remains subject to the two year requirement.

Thirdly, finding that plaintiffs are subject to the foreign residence requirement is consistent with one of the primary objectives of the Exchange Visitor Program

ther regulation have been considered by the court as arguments against application of both regulations.

**8.** Plaintiffs do not argue that the regulation is invalid as against the statute but rather, only that the regulation is inapplicable to the circumstances of this case. (Plaintiffs' Reply Memorandum at 3.)

**9.** In *Matter of Tabcum* the Regional Commissioner also rejected the applicant's contention that by amending the Act in 1970 so as to categorize those persons still subject to the foreign residence requirement, Congress had intended to include the accompanying spouse and/or children of an exchange visitor among those persons not subject to the requirement. Prior to the 1970 amendment of section 212(e) of the Act, all exchange visitors were subject to the two year foreign residence requirement. In place of this broad rule of prohibition was put a new rule that exchange visitors were not subject to the requirement unless they had received Government funding or were on a skills list. *See Matter of Baterina,* 15 IN 127 (1977). To the extent plaintiffs advance the argument that the 1970 amendment is meant to be read as relieving spouses and children of exchange visitors from the two year foreign residence requirement, the court rejects the argument for the reasons stated by the Regional Commissioner in *Matter of Tabcum* at 115.

which is to facilitate the impartation of live impressions of the United States and its culture to other societies. *See generally* S.Rep. No. 1608, 84th Cong., 2d Sess. 2, *reprinted in* 1956 U.S.Code Cong. & Ad. News 2662–2663. Even though this objective is directed primarily towards the principal alien, this court does not see why it cannot be equally applicable to a spouse and child of the principal alien thereby subjecting them to the foreign residence requirement.[10]

### III. CONCLUSION

There being no dispute as to a material fact and since defendant is entitled to judgment as a matter of law, the court will grant defendant's motion for summary judgment and deny plaintiffs' motion for summary judgment.

An appropriate Order will be entered.

---

**10.** It should be further noted, as it was in *Matter of Tabcum,* that in cases such as this where both a J–2 spouse and child are involved, if the spouse and child are not subject to the foreign residence requirement, the principal alien could possibly gain a back-door access to a waiver of the residence requirement on the basis of hardship grounds. *See Matter of Tabcum,* 14 IN at 115.